FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 15 2025

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL NO. 25-5180 KG |
| Plaintiff, ) | |
| ) | 18 U.S.C. § 1951(a): Conspiracy to |
| vs. ) | Commit Interference with Commerce by |
| ) | Extortion Under Color of Official Right. |
| **TIMOTHY McCARSON**, ) | |
| ) | |
| Defendant. ) | |

INFORMATION

The United States Attorney charges:

Introduction

At all times relevant to this Information:

New Mexico Driving While Intoxicated (DWI) Laws

1. New Mexico has a series of state laws designed to target the unlawful driving of vehicles while under the influence of alcohol or drugs. *See* New Mexico Statutes Annotated (NMSA) 1978, § 66-8-101, *et seq.* (2016). Under New Mexico state law, a person has committed DWI if they operated a vehicle while impaired to the slightest degree, *see* NMSA 1978, § 66-8-102(A) (2016), or with a blood alcohol concentration (BAC) greater than .08, *see* NMSA 1978, § 66-8-102(C). A person has committed aggravated DWI if (1) their BAC is .16 or greater, (2) they caused injury as a result of their unlawful operation of a motor vehicle, or (3) they refused to submit to blood or breath testing. *See* NMSA 1978, §§ 66-8-102(D), 66-8-107(A). (Collectively, these are referred to as DWI Offenders.)

2. DWI offenses that do not involve injury or death to another are generally misdemeanors, unless the offender has at least three prior DWI convictions (resulting in the next DWI arrest being a state felony). *See* NMSA 1978 at § 66-8-102(F)-(K). The range of

imprisonment depends on an offender's prior DWI conviction history, but all DWI convictions require payment of associated court fees in addition to potential fines. Additionally, if a person is convicted of DWI, they must have an ignition interlock installed in their vehicle (or in any vehicle driven by them).

3. To initiate a state court misdemeanor DWI offense, the arresting officer either files a criminal complaint immediately following the arrest and takes the offender into custody, *see* New Mexico State Court Rules (NMRA) 7-201, or later files a criminal complaint but seeks a summons from the state court, *see id.*, *see also* NMRA 7-204. If the DWI Offender is hospitalized or otherwise unable to be taken into custody immediately following the DWI incident, the officer may later file the criminal complaint and seek a summons from the court.

4. Prior to March 2022, once the New Mexico state criminal DWI charges were initiated, all parties, including a defendant, were entitled to conduct a pretrial interview (PTI) of all witnesses, including law enforcement officers. *See* NMRA 7-504(1). To arrange the PTI, the parties were required to confer and agree in good faith to arrange a date and location for the PTI. If that was unsuccessful, defense counsel could seek a subpoena from the state court for a PTI. Typically, the initial PTI would be arranged at the law enforcement office and, if the officer did not attend, defense counsel could request a subpoena for the PTI at another location, including the defense attorney's law firm. On March 24, 2022, the New Mexico State Supreme Court entered an order temporarily suspending all PTIs in cases occurring in the Bernalillo County Metropolitan Court, which included all misdemeanor DWI arrests in Bernalillo County. *See* New Mexico Supreme Court Order NO. 22-8500-016. Because of this, since March 2022, there have not been PTIs for misdemeanor DWI cases that occur in Bernalillo County.

### New Mexico Motor Vehicle Division (MVD) Administrative Proceedings

5.      For DWI Offenders with New Mexico driver's licenses, in addition to the criminal case, there is a separate administrative process handled by the New Mexico MVD to determine if the DWI Offender's driver's license should be revoked (the "MVD hearing"). *See* NMSA 1978, § 66-8-111. Under New Mexico state law, the officer must immediately provide the DWI Offender written notice of revocation of the DWI Offender's driver's license and of the right to an administrative hearing. *See id.* at § 66-8-111.1(A). This written notice serves as the offender's temporary license for twenty days or, if the DWI Offender requests an administrative hearing, until after the order is entered following that hearing. *See id.* at § 66-8-111.1(B). If the DWI Offender requests a hearing, an administrative hearing is held, at which the officer must appear and provide testimony that there were "reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drugs", the DWI Offender was arrested, and the results of the blood or breath test (or refusal). *See id.* at § 66-8-112(F). If the officer does so, the MVD then suspends the DWI Offender's driver's license.

### New Mexico DWI Law Enforcement

6.      Multiple policing agencies share in the enforcement of DWI laws within and around the Albuquerque area including, but not limited to, the Albuquerque Police Department (APD), the New Mexico State Police (NMSP), and the Bernalillo County Sheriff's Office (BCSO). Each agency has its own internal guidelines related to officer and deputy conduct and behavior.

7.      APD has a Personnel Code of Conduct that requires all officers to "act in a manner that is above reproach. This includes avoiding behavior that may cast doubt on their integrity, honesty, moral judgment, or character; that tends to bring discredit to the Department;

3

or that impairs the Department's efficient and effective operation." APD Standard Operating Procedure 1-1-6(A)(1).

### The Defendant

8.  At all times material to this Information, defendant **TIMOTHY McCARSON** was a sworn law enforcement officer with APD. **McCARSON** joined APD and became a sworn law enforcement officer in 2006. **McCARSON** was assigned to work in the DWI unit on June 18, 2011. **McCARSON** retired from APD on July 1, 2022.

### Conspiracy to Interfere with Commerce by Extortion Under Color of Official Right

9.  The allegations set forth in paragraphs 1 through 8 of this Information are realleged and incorporated herein by reference.

10. From on or about 2015, through on or about July 1, 2022, in Bernalillo County, in the District of New Mexico, the defendant, **TIMOTHY McCARSON**, unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed, and acted interdependently with other persons to commit an offense defined in 18 U.S.C. § 1951(a), specifically interference with commerce by extortion under color of official right.

### The Object of the Conspiracy

11. The object of the conspiracy was for **McCARSON** and other sworn law enforcement officers (the "Conspiring Officers") to agree to act, or to fail to act, to ensure DWI Offenders that they arrested for DWI and who retained THOMAS CLEAR avoided criminal and administrative remedies related to their DWI arrests in exchange for items of value provided by CLEAR in coordination with RICARDO MENDEZ.

### Manner and Means of the Extortion Conspiracy

12. The object of the conspiracy was accomplished as follows:

  a.  CLEAR, a lawyer, owned a criminal defense law firm located in Albuquerque, New Mexico, that specialized in DWI defense. CLEAR appeared at the criminal and administrative settings for cases that were part of the scheme and moved to dismiss the proceedings based on the Conspiring Officers' intentional failures to appear at required settings.

  b.  MENDEZ worked for CLEAR's law firm as an investigator and handled the day-to-day coordination of the scheme.

  c.  **McCARSON** was a Conspiring Officer who, along with other Conspiring Officers, participated in the extortion conspiracy by agreeing to accept and accepting U.S. currency and other gifts in exchange for his agreement to act, or to fail to act, in such a way that would guarantee the dismissal of DWI-related criminal charges and MVD administrative proceedings. **McCARSON** also participated by agreeing to accept and accepting U.S. currency in exchange for not filing charges in connection with a DWI-related arrest.

  d.  As part of the conspiracy, once the DWI Offender retained CLEAR, CLEAR, MENDEZ, and the Conspiring Officer, including **McCARSON**, would coordinate the Conspiring Officer's non-appearance at required settings on the state criminal case, including PTIs and trials, and the MVD administrative proceeding. When the Conspiring Officer failed to appear as arranged, CLEAR moved to dismiss the criminal case and the MVD proceeding. Because the Conspiring Officer was a necessary witness and did not appear as required, the case and proceeding would be dismissed. Because the state criminal charges were dismissed, the fines, fees, and interlock requirement that would otherwise have applied to the DWI conviction were not imposed. In addition, the DWI Offender's driver's license was not revoked, allowing the DWI Offender to continue to drive without restriction.

  e.  As part of the conspiracy, **McCARSON** also agreed to accept U.S. Currency in exchange for ensuring criminal and administrative proceedings were not initiated

5

against a DWI offender, J.H. **McCARSON** had arrested J.H. on DWI-related charges stemming from a DWI-related crash. **McCARSON** did not book J.H. immediately into custody following the crash because J.H. suffered injuries related to the crash. As part of the conspiracy, **McCARSON** accepted $5,000 and, in exchange for that money, no criminal charges or administrative proceedings were ever initiated against J.H.

    f.    When MENDEZ met with the recruits to bring them into the conspiracy, MENDEZ often discussed many of the other Conspiring Officers, including **McCARSON**, who had been and were part of the conspiracy from the different law enforcement agencies (APD, NMSP, and BCSO). This allowed the recruit to feel more comfortable joining the conspiracy because of the number of senior, and often high-ranking, officers who were also co-conspirators. This generational participation, particularly within APD, allowed the conspiracy to take root amongst almost the entire APD DWI unit over a lengthy period of time.

    g.    Co-conspirators' conduct in perpetuating the conspiracy affected commerce.

    h.    Co-conspirators frequently used coded language in their communications to avoid detection and criminal prosecution.

In violation of 18 U.S.C. § 1951(a).

    TODD BLANCHE
    Deputy Attorney General
    RYAN ELLISON
    Acting United States Attorney

    SHANA B. LONG
    KATHERINE L. LEWIS
    Assistant United States Attorneys
    201 Third Street, Suite 900
    Albuquerque, New Mexico  87103
    (505) 346-7274